ELLIS, Judge.
This is a petitory action in which the plaintiff alleges that he is the true and lawful owner of the 'following described property: A certain strip of land One Hundred (100) feet in width located outside and East of the Village of Port Barre, St. Landry Parish, and being part of the Railroad Right of Way abandoned by the Texas and New Orleans Railroad, Successor in title to Morgan’s Louisiana 'and Texas Railroad and Steamship Company. The said strip being bounded North by continuation of the abandoned Right of Way, now property of Val-cin Dupre or assigns; South by continuation of the abandoned Right of Way, now property of Euclide Willingham; East by Louisiana Black Top Highway, Number 214 — D; and West by other property of petitioner, which he acquired in the hereinafter described partition between himself, George Duplechain and Euclide Willing-ham. The abandonment of the Right of Way by the Texas and New Orleans Railroad being recorded as Act Number 228282 on June 29, 194S in Conveyance Book Y-7 page 59, records of St. Landry Parish.
He alleged that the above described property had been acquired for a right of way for the purpose of the construction and operation of a railroad by the Morgan’s Louisiana and Texas Railroad and Steamship Company from Mrs. Felicite Robin, widow of D. P. Saizan, by deed recorded July 5, 1906, in the conveyance records of St. Landry Parish, and that this right of way deed contained the following provisions: “This grant shall be in perpetuity unless the grantee should cease to operate a railroad over the land granted, in which event the land granted shall revert to the then owner or owners of the adjacent land that is to the grantor, his heirs or assigns.”'
Petitioner 'further alleges that he, the defendant George Duplechain, and one Eu-clide Willingham, who is not a party to this suit, acquired in indivisión together with other property an 87 acre tract from the successors in title of Mrs. Robin, Widow of D. P. Saizan, and on the same date by an act of partition plaintiff became the sole owner of the following described property: “A certain tract of land, together with improvements thereon situated in St. Landry Parish, Louisiana, containing 27 acres more or less, being balance of the 87 acre tract hereinabove described as Item No. 1, and being bounded on the North and East by M. L. & T. R. R., south by Lot No. 2, above described and allotted to Euclide Wil-lingham, and West by property of Valsin Dupre,” and the defendant George Duple-chain became the sole owner of the following described property: “A certain tract of land, together with all buildings and improvements thereon, situated in St. Landry Parish, La., bounded on the North by Armand Zerangue and Bayou Courtableau, on the South by the Black Top Road, on the East by Mrs. Josephine S. Watkins, and on the West by property of Val Williams, or *617 assigns; and containing 28 acres more or less; and being all the tract described in Item No. 1, hereinabove which lies between the Bayou Courtableau and the Black Top Road.”
He further alleges that prior to the date of acquisition by plaintiff and his two co-owners from the successors of Mrs. Robin, widow of D. P. Saizan, that the black topped Highway No. 214 — D had been opened on the East side of the railroad right-of-way and that this highway abutted on the strip of 'land which had been used by the railroad and which is now the subject of this suit. He further alleged that the abandonment of the right of way by the Texas and New Orleans Railroad, successor in title to the Morgan’s Louisiana and Texas Railroad and Steamship Company, of the strip of land in dispute was recorded on June 29, 1945, in the records of St. Landry Parish, and that on that date that the .said strip was bounded on the east by black topped Highway 214-D and on the west by the property of petitioner, “and the ownership of the entire strip reverted to him under the terms of the original grant of the Right-of-way because petitioner, at the time of the abandonment, was the owner of the only land adjacent to the abandoned strip.” He further alleges that George Duplechain and the other fourteen defendants are owners of tracts or lots of land situated on the east' side of black topped Highway 214 — D which parallels the railroad right of way that plaintiff is claiming in its entirety, and that they took actual physical possession of the portion of this right of way opposite their tracts of land situated across black topped Highway 214-D by erecting fences and using and claiming it as their own property without any title whatsoever and without any right to-remain on the property, and that all of the defendants refused to deliver possession of the property to the petitioner.
Twelve of the defendants, through their counsel, filed exceptions of misjoinder of parties defendant and v-agueness, which were overruled by the lower court. They then filed an exception that plaintiff’s petition discloses neither a right nor a cause of action, which was overruled. In the exception of no cause or right of action filed on behalf of twelve of the defendants the ex-ceptors disclaimed any possession or title to or any interest in the west 50 feet or i/¿ of said abandoned strip of the railroad right of way, and declared that the only property involved in this controversy is the eastern 50 feet or Y¡ of this abandoned strip. This disclaimer was also contained in the answer of these 12 defendants. The answer of the defendants was a denial except for the disclaimer mentioned and sets up claim to the eastern 50 feet of the abandoned strip of the railroad right of way.
The defendants claimed title to 'the east half of this railroad right of way in their answer based upon an allegation that only a right of way or easement or servitude was granted to the public and State of Louisiana for black topped Highway 214-rD which was adjacent to the abandoned railroad strip in dispute, and that the title to the fee of the liuid over which the highway was located remained in the owner or owners of the fee at the time the highway was opened, and that the defendants as owners of the fee of the land over the highway which was adjacent to the abandoned railroad strip in dispute, were entitled to the full ownership of the east 50 feet.
These twelve defendants further answered alternatively that they were the owners of at least the eastern 21 feet of the abandoned railroad strip or, if not of 21 feet, of at least an undivided % interest in the eastern 50 feet of the abandoned railroad strip.
There were three of the defendants represented by an attorney-ad-hoc who filed a' general denial.
The case was decided by Judge Boagni in favor of plaintiff as prayed for on its merits and motion for rehearing was filed and overruled by his successor, and fourteen of the defendants have appealed.
Defendants are reurging their exception of vagueness under authority of the case of Weaver Bros. Realty Co. v. Voight, La.App., 191 So. 580. It is their contention that as the plaintiff did not deraign his title the exception should be maintained. In the case cited the defendants had filed an *618 exception of no cause of action and their contention was: “We think the law is un-misakably clear from the authorities referred to in the syllabus of this brief that where the ownership of timber is claimed in a suit, it is a separate estate from the land itself, and the rules of law applicable are exactly those of a petitory action. Therefore, where plaintiff does not claim the land, he must set forth his title with the particularity required in a petitory action. Consequently in an action of this nature, plaintiff must set forth his title, either prescriptive or in a chain of title to a common author, or back to and including a patent by the U. S. Government. This has not been done, and the defendants must be discharged from the demand as provided by Article 44 of the Code of Practice.”'
The Court merely held that the plaintiff did state a cause of action as to plaintiff’s title to the timber in dispute but that an exception of vagueness was defendant’s remedy for obtaining detailed information concerning plaintiff’s interest in and right to the property, if such was desired by them. The case is not authority for the proposition that merely because a plaintiff does not deraign his title to a common author or back to and including a patent by the Government that an exception of vagueness must be sustained.
In the present case the plaintiff has sufficiently set forth his title and the exception of vagueness was properly overruled.
As to the exception of misjoinder which was based upon the alleged failure of the plaintiff to set forth a common title as to him and the various defendants, the latter cite Davidson v. Frost-Johnson Lumber Co., 126 La. 542, 52 So. 759; Davidson v. Fletcher, 126 La. 535, 52 So. 761; Delesdernier Estate, Inc., v. Zettwoch, La.App., 175 So. 137.
In the Davidson v. Frost-Johnson Lumber Company case, supra [126 La. 542, 52 So. 759], the syllabus states:
“1. Parties — Defendants—Joinder.
“Whilst all who are parties, or privies to, or who have a common interest in, the same title, or titles, to real estate, may, for some purposes, be joined as defendants in the same suit, to bring a number of persons into court as defendants, with respect to a number of titles, without regard to their relation to them, and to hold them in court for the purposes of issues with which they have no concern, would be a hardship, would tend to confusion and embarrassment, and would be inconsistent with well-established jurisprudence.
“2. Dismissal and Nonsuit — Misjoinder of Defendants — Power of Court.
“Where an exception of misjoinder of defendants is sustained, the court cannot discriminate by dismissing the suit as to one defendant, rather than another, but must, ordinarily, dismiss it as to all.”
It is also stated in the body of the opinion that: “Our Code of Practice makes no provision for determining when parties may, or may not, be joined either as plaintiffs or defendants. We have to be guided in that regard by the well-settled rules of pleading as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest, or where the defendants would be embarrassed in their defense, or delays would be caused or complications arise, in connection with costs, or otherwise.”
In Davidson v. Fletcher, supra [126 La. 535, 52 So. 761], the court stated in the syllabus : “Action — Causes of Action — Mis-joinder.
“Plaintiff sought to recover certain land against defendant F., alleged to have entered as plaintiff’s tenant, and thereafter to have claimed the land under a tax deed which plaintiff claimed was void, and in the same action sought to recover the land as against defendant G., whom she alleged entered clandestinely, without her knowledge and consent, as a squatter, and to recover for use and occupation. Held that, since there was no connection between the defendants, the petition contained distinct causes of action against different defendants, and was, therefore, subject to exception for misjoinder of causes of action and parties.”
*619 In the case of Delesdernier Estate, Inc., v. Zettwoch, supra [175 So. 138], the Court stated:
"It is well settled in this state that the test, to be applied in considering a plea of misjoinder is whether the parties, plaintiffs or defendants, have a common interest in the subject-matter of the suit. See Reardon v. Dickinson, 156 La. 556, 100 So. 715; Gill v. City of Lake Charles, 119 La. 17, 43 So. 897; and Succession of Coles v. Pontchartrain Apartment Hotel, La.App., 172 So. 28. Therefore, unless the defendants in suit have a common interest with respect to plaintiff's title to the four parcels of land, the action of the -district judge in maintaining the exception of misjoinder is correct.
* * * • * * *
“In the case at bar, the plaintiff has neither alleged a joint trespass by the defendants nor has it prayed for judgment in-sólido against them. It is therefore to be presumed that the defendants are committing separate and distinct acts of trespass and hence are without mutuality of interest in the defense of the case. Moreover, the suit is not one for damages resulting to plaintiff because of defendants’ trespasses but is, in truth, a petitory action wherein the plaintiff is seeking to be declared the owner of all of the parcels of land.”
In the present case the titles of plaintiff and defendants are traceable to a common author and the defense of each is on the same ground and, therefore, they have a common interest in sustaining this defense. The exception of misjoinder was properly overruled.
As to the merits of the case, it is shown that Mrs. Felicite Robin, widow of D. P. Saizan was the owner of 87 acres of land across which she granted a right-of-way for the construction of a railroad to the Morgan’s Louisiana and Texas Railroad and Steamship Company, which contained the provision for its reversion in the event of abandonment by the railroad, supra. Mrs. Saizan’s heirs or successors then sold the 87 acres- to the plaintiff Chiasson, defendant Duplechain, and one Euclide Wil-lingham, not made a party to this suit. In this sale the 87 acres is described -as follows: “A certain tract of land, together with all thé buildings and improvements thereon, situated at Port Barre, St. La., lying in Section 4, T-6-S, R-5-E, containing 87 acres, more or less, bounded on the north by Armand Zeringue, Bayou Courtableau, and M. L. & T. Railroad -and S. S. Co., South by property of Mrs. Josephine Saizan Watkins, and on the west by property of Valsin Dupre and Van Williams.”
It will be noted that no eastern boundary is given in this description and that the Morgan’s Louisiana and Texas Railroad and Steamship Company is given as one of the northern boundaries of this 87 acres. Possibly this railroad ran north and east, that is, diagonally, across the 87 acres. In any event, black topped Highway 214-D had been constructed to the north or east, or both, of this railroad and parallel to it, which would indicate that the railroad and highway ran diagonally across the 87 acres from the northwest to the southeast. We ■are not certain of this as there is no plat of any of this property in the record.
On the same day that the three co-owners acquired the property, they amicably partitioned it as follows:
“Lot No. 1. A certain tract of land, together with all buildings and improvements thereon, situated in St. Landry Parish, La., bounded on the North by Armand Zerangue and Bayou Courtableau, on the south by the black top 'road, on the east by Mrs. Josephine S. Watkins, and on the west by property of Van Williams, or assigns; and containing 28 acres, more or less; and being all the tract described in Item No. 1, here-inabove which lies between the Bayou Courtableau and the black top road. Said tract being valued at $750.00.
“Allotted to and accepted by George Du-plechain.”
“Lot No. 2. A certain tract of land, together with all improvements thereon, situated in St. Landry Parish, La., containing 32 acres, being taken from the southern part of that part of the 87 acre tract here-inabove described as Item No. 1, lymg south of the railroad; and being bounded on the north by Lot No. 3, hereinafter described and allotted to Edward Chiasson, *620 south by the property of Mrs. Josephine S. Watkins, East by the M. L. & T. R. R. and West by Valsin Dupre, said 32 acre tract being separated from the balance by a line drawn parallel to the southern boundary of the tract; said tract of 32 acres being valued at $850.00.
“Allotted to and accepted by Euclide Willingham.”
“Lot No. 3. A certain tract of land together with improvements thereon, situated in St. Landry Parish, La., containing 27 acres, more or less, being the balance of the 87 acre tract hereinabove described as Item No. 1, and being bounded on the north and east by M. L. & T. R. R., south by Lot No. 2, above described and allotted to Euclide Willingham, and west by property of Valsin Dupre.
i|c ifc iji íjj
“Allotted to and accepted by Edward Chiasson.”
While plaintiff and defendants proceed upon the theory that whoever owns the property adjacent to the railroad right of way upon its abandonment became the owner of that particular piece of abandoned property, it is our opinion that whoever owned the land under the railroad right of way at the time of its abandonment was the owner, regardless of any adjacent owner. It will be noted without dispute that Chiasson, Duplechain and Wil-lingham acquired the entire 87 acres across which this disputed strip of land ran. Unless they divested themselves of title thereto they are still the owners in indivisión. The record shows that when they partitioned this property they did not partition any part of or include in the partition any part of the railroad right of way in dispute. The description partitioned the 87 acres up to the railroad right of way as one boundary and the black top Highway No. 214-D as another boundary. In other words, the plaintiff acquired a strip up to the railroad right of way on the 'south while Duplechain acquired a strip up to the highway on the north or east, and Willing-ham acquired a strip south of Chiasson. Therefore, as the railroad never did acquire a title to the land but only a servitude or right to construct a railroad on the strip and across the land as described, which was recognized by the railroad in its act of abandonment, and in the same act the railroad quitclaims and abandons to the grantor or her heirs or assigns, who, in this case, were Chiasson, Duplechain and Willingham.'
As between these three parties, they are also the owners of the land under the highway in indivisión. We are referring to the land located under the highway on the 87 acres originally purchased by these three parties. Ownership of the property lying adjacent to the highway would give no one a title to the railroad right of way. There is no difference in the legal situation insofar as a railroad right of way or highway is concerned where the only thing acquired by the railroad or state is a servitude or right of use and the fee to the land is retained by the original vendor, in which event he can sell it subject to this right, and in the present case it was so sold and included in the sale of the 87 acres to Chiasson, Duplechain and Willingham.
Under Article 658 of the Civil Code it is provided:
“Right limited to use. — The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it.
“Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the -use of them; the owners of the land can not change the roads except in conformity with the regulations of the police established on this subj ect.”
Also, we find cited under this article many cases with reference to railroads and highways which are as follows: New Orleans Cotton Exch. v. Board of Assessors, 37 La.Ann. 423; Hatch v. Arnault, 3 La. Ann. 482; City of Shreveport v. Simon, 132 La. 69, 60 So. 795; Mendez v. Dugart, 17 La.Ann. 171; Bradley v. Pharr, 45 La.Ann. 426, 12 So. 618, 19 L.R.A. 647; Fuselier v. Police Jury, 109 La. 551, 33 So. 597; Ayer v. Kirkwood, 9 La.App. *621 306, 119 So. 475; Bond v. Texas & P. R. Co., 181 La. 763, 160 So. 406.
The case cited by defendant in his brief, viz., Louisiana & Arkansas Railway Company v. Louisiana Railway & Navigation Co., 127 La. 587, 53 So. 872, and statement to the effect that “the land would revert to the adjacent owners was merely a restatement of the law of Louisiana” is not exactly correct, for this case holds that land expropriated by a railroad company for its right of way reverts to the owner when it has ceased to be used for the purpose for which it was appropriated. Therefore, in this case insofar as Chias-son, Duplechain and Willingham are concerned, they own the property in dispute in indivisión, that is, an undivided one-third interest each.
 As Willingham is apparently the owner of an undivided % interest in the property in dispute, no judgment can be rendered until he has been made a party to the suit. We, on our own motion, can take notice of nonjoinder of parties defendant. See Succession of Todd, 165 La. 453, 115 So. 653; De Hart v. Continental Land & Fur Co., Inc., 196 La. 701, 200 So. 9; Bologna Bros. v. Stephans, 206 La. 112, 18 So.2d 914; Douglas v. Haro, 214 La. 1099, 39 So.2d 744; Schaub v. O’Quin, 214 La. 424, 38 So.2d 63; Greer v. Sumney, La.App., 41 So.2d 526; Breazel v. Taylor, La.App., 46 So.2d 138; Sanders v. Flowers, 218 La. 472, 49 So.2d 858.
We do not pass upon the effect of the disclaimer filed by twelve of the defendants herein.
It is, therefore, ordered that the judgment of the District Court be reversed, annulled and set aside, and it is now ordered that this case be remanded to the District Court in order that Euclide Wil-lingham may be made a party to this suit and the case be proceeded with in' the District Court in accordance with law, the plaintiff to pay the costs of this Appeal.